# MEMO ENDORSED

ALTMAN & COMPANY P.C.
COUNSELORS AT LAW
260 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10016

212-663-7600 · PHONE
212-663-7655 · FAX

September 24, 2007

*[Handwritten endorsement: Initial pretrial conference to be held on October 22, 2007 at 10:15 a.m. Time to answer or move adjourned until date to be set at conference. SO ORDERED. [signature] 9-26-07]*

**BY HAND**

Honorable P. Kevin Castel
U.S. District Court for the
  Southern District of New York
500 Pearl Street
New York, New York 10007

*[Stamp: RECEIVED SEP 25 2007 CHAMBERS OF P. KEVIN CASTEL U.S.D.J.]*

*[Stamp: USDS SDNY DOCUMENT ELECTRONICALLY FILED DOC #: _____ DATE FILED: 9/27/07]*

Re:  Zucker v. Big Lake Services Company, LLC
     07 Civ. 7815 (Castel, J.)

Dear Judge Castel:

    We represent defendants Big Lake Services Company, LLC ("BLSC") and Big Lake Management, LLC ("BLM"). I write, pursuant to your individual practices, in order to request permission to submit a motion to dismiss the claims the plaintiffs have asserted against those defendants. We are ready to submit the motion today or at such time as the Court directs.

    This is an action for fraud, conversion, and breach of fiduciary duties against an oil field services company (BLSC) and its managing member (BLM). A copy of the complaint is annexed hereto as Exhibit A. In their second claim the plaintiffs allege that some of them paid money to former BLM manager Bruce Ransom upon his representation that he would invest it in a loan to an entity called Lothian Cassidy.[1] However, Mr. Ransom purportedly kept the money for himself and bought units of BLSC with it. The plaintiffs allege in their third claim that others of them made checks to two companies, Lothian Energy and Business Capital Investments, at Mr. Ransom's instance in order to purchase interests in BLSC. According to them, BLSC did not issue those interests to them and BLM's current managing member has informed them that BLSC never received their moneys.[2] The plaintiffs contend in their first claim that the defendants conducted an unfair BLSC unitholder vote that resulted in the approval of a

---

[1]    The allegations relating to plaintiffs' second claim are set forth in Exh. A at ¶¶ 13-28 and 57-58.

[2]    The allegations relating to plaintiffs' third claim are set forth in Exh. A at ¶¶ 29-36 and 59-60.

ALTMAN & COMPANY P.C.

Hon. P. Kevin Castel
September 24, 2007
Page 2

management buyout proposal at a purportedly insufficient price.[3]

    Plaintiffs' second and third claims should be dismissed because they do not allege fraud with the required specificity and wholly fail to state claims for conversion. Plaintiffs do not clearly allege in their second claim that Mr. Ransom knowingly misrepresented his intention to invest their money in a loan but instead only assert "on information and belief" that he ultimately used it to buy interests in BLSC for himself. (Complaint at ¶¶ 13, 19, 26) Plaintiffs also do not state when and where Mr. Ransom made any misrepresentations regarding that matter or the persons present when he did so.[4] Their allegation that Mr. Ransom was acting for BLM at the time is conclusory and counterintuitive. (¶ 25)

    The plaintiffs also do not allege in their second claim when, where, and how BLSC employees transferred BLSC interests to Mr. Ransom's unidentified "fictitious parties and alter egos" to assist him, as they assert in conclusory terms, or the names of the BLSC employees who purportedly did so. (Complaint at ¶¶ 19, 21, 23) Nor have they provided specific facts strongly implying that BLM and BLSC acted at any time with fraudulent intent in connection with that matter.[5] Further, nothing in the second claim suggests the defendants received specific, identifiable moneys belonging to the plaintiffs as required to sustain a cause of action for conversion of money.[6]

    Plaintiffs' third claim is deficient for many of those same reasons. Again they fail to allege clearly that Mr. Ransom made any present, intentionally false statements to them or to specify the dates and places of misrepresentations or the means by which he made them. Their attribution of Mr. Ransom's statements to the defendants is again conclusory, as are their allegations that the defendants assisted Mr. Ransom in "covering

---

    [3] The allegations relating to plaintiffs' first claim are set forth in Exh. A at ¶¶ 37-56.

    [4] See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.2d 282, 293 (S.D.N.Y. 2000); Ryan v. Hunton & Williams, 2000 WL 1375265 at * 7 (E.D.N.Y. 2000).

    [5] See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994); Ryan v. Hunton & Williams, supra, 2000 WL 1375265 at * 7-8.

    [6] The Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 1751780 at * 14 (S.D.N.Y. 2003).

ALTMAN & COMPANY P.C.

Hon. P. Kevin Castel
September 24, 2007
Page 3

up" the "fraud" by authorizing the transfer of BLSC units from his (unidentified) nominees to some of the plaintiffs. (Complaint at ¶ 34) Facts implying defendants' scienter are not pleaded. That part of the third claim that sounds in conversion is deficient because those plaintiffs do not allege that the defendants ever even received any of their moneys.[7]

Most of plaintiffs' first claim should be dismissed because most of the conduct they seek to impute to the defendants there is not actionable. (Complaint at ¶¶ 39-43) Their assertion, that the price of a proposed management buyout of BLSC is inadequate, is deficient in the absence of (specific) allegations that the defendants misrepresented material facts to them. Notwithstanding plaintiffs' allegations, BLSC does not, as a matter of law, have any obligation to count the votes of plaintiffs who paid money to Mr. Ransom but to whom BLSC units were not issued. Nor is it required to disqualify Mr. Ransom from voting duly issued units that plaintiffs contend he purchased with moneys stolen from them. Plaintiffs have not even alleged that they satisfied statutory or contractual requirements for voting shares they never received or that Mr. Ransom did not satisfy the requirements for issuance of BLSC units to him.[8] Much less have they shown why the defendants are required to go back in time before the shareholder vote while the dispute between them and Mr. Ransom is determined.

In sum, the complaint is a vaguely pleaded indictment of nonparty Bruce Ransom that has been twisted into legally deficient claims against BLM and BLSC. It suggests that the plaintiffs should sue Mr. Ransom, though with allegations much more specific (and accurate) than the ones they have presently asserted. The plaintiffs' assertion of claims against BLM and BLSC, and only those defendants, is not only meritless; it is mystifying. They should be dismissed and plaintiffs left to bring a more considered action against the appropriate parties.

Respectfully submitted,

Eric Rosenberg

---

[7] See e.g. Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp., 14 A.D.3d 678, 790 N.Y.S.2d 143, 145 (2d Dep't 2005); Zion Tsabbar, DDS P.C v. Hirsch, 266 A.D.2d 91, 698 N.Y.S.2d 651 (1st Dep't 1999).

[8] See 6 Del. C. §§ 18-301(b), 18-215(e), and 18-302.